**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CHARLIE A. PAYTON,

        Plaintiff,

vs.                                    No. CIV 01-1043 LCS/KBM

UNITED STATES DEPARTMENT
OF AGRICULTURE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is an action for judicial review of a final decision by the Farm Service Agency (FSA) of the United States Department of Agriculture (USDA) revoking Plaintiff's enrollment in the Conservation Reserve Program (CRP) for Farm 564, Tract 1109, located in Roosevelt County, New Mexico. Review is governed by the Administrative Procedure Act (APA), 5 U. S. C. § 701, *et seq*. Having considered the administrative record, briefs, relevant law, and being otherwise fully advised, I recommend that, if this Court has jurisdiction, that the USDA's decision be affirmed and that this appeal be dismissed.

**I.    Statutory Background**

The CRP authorizes the Secretary of Agriculture to contract with eligible farm owners and operators to conserve and improve the soil and water resources of agricultural land by removing the land from production and establishing cover crops pursuant to an approved conservation plan. *See* 16 U.S.C. § 3801, *et seq*.; 7 C.F.R. § 1410, *et seq*. In exchange for the farm owner and operators' agreement to refrain from growing crops on the land, the government pays the farmer rent on the land. 7 C.F.R. § 1410.21(b). In exchange for the payments, the farm owners and operators agree,

among other things, to implement a conservation plan, establish vegetative cover, not allow grazing, harvesting, or other commercial use of the crop from the cropland. 7 C.F.R. § 1410.20.

**II.     Administrative Record.**

On September 11, 1997, Plaintiff (as operator) and Kenneth Haskew (as owner) enrolled fifty-five acres of Farm 564, Tract 1109 in the CRP, effective October 1, 1997. (R. at 81.) Plaintiff and Haskew agreed to establish a cover of grass on a total of fifty-five acres, consisting of twenty acres in field 1A and thirty-five acres in field 2A.[1] (R. at 240.) The twenty and thirty-five acre parcels were designated on an aerial photo map. (R. at 25; 161-179.) Plaintiff signed an acreage report in 1998, with an area delineated in the aerial photocopy for field 2A consisting of thirty-five acres matching the area originally approved for enrollment. (R. at 154-156). Mike Cone signed an acreage report on behalf of Plaintiff in 1999, with an area delineated in the aerial photocopy for field 2A consisting of thrity-five acres matching the area originally approved for enrollment. (R. at 149-151.)

On May 31, 2000, Kenneth and Joyce Haskew deeded the property to Shannon and Tammy Lee. (R. at 94.) Plaintiff continued as operator, but Mr. Lee requested that the CRP area be verified. (*Id.*) On June 9, 2000, County Executive Director Harold Terry visited the farm and discovered that the location of field 2A was not located in the area originally delineated and approved for enrollment in the CRP program and that the area that had been approved for CRP participation was planted with a crop of wheat. (R. at 26; 105.) Mr. Terry noted that the CRP acreage was not located north of the house as the map had indicated, but appeared to located west of the house. (R. at 101; 114.)

Plaintiff and Mr. Lee were informed verbally that the wheat could not be harvested. (R. at 102.) In addition, on June 26, 2000, the County Office of the FSA notified Plaintiff by letter that a

---

[1] Only the thrity-five acre parcel is at issue.

discrepancy existed on the location of the acreage enrolled in CRP, that an ineligible cover of wheat was planted on the acreage, and that this unauthorized wheat could not be harvested. (R. at 26; 108.) A farm visit on July 7, 2000, revealed that the thirty-five acres of wheat in field 2A had been harvested and the stubble plowed. (R. at 26; 94.) On July 17, 2000, Mr. Lee signed an acreage report showing the thirty-five acre parcel in the same location as the prior years. (R. at 93-96.)

On November 7, 2000, the Roosevelt County Committee for the FSA notified Plaintiff that a violation of the CRP contract had occurred. (R. at 89-90.) The Committee determined that the physical location of the CRP field, consisting of thirty-five acres, was not located where the CRP area was originally delineated and approved for enrollment into CRP, and a portion of the CRP acreage was planted to wheat and harvested, and consequently Plaintiff had not made a "good faith" effort to comply with the terms and conditions of the CRP contract. (R. at 89.)

On December 21, 2000, Plaintiff met with the County Committee to present a request for reconsideration. (R. at 204.) Plaintiff was accompanied by Mike Sandefer, Soil Conservation Technician with the Roosevelt County USDA-NRCS. (*Id*.) On May 12, 1998, Mr. Sandefer had staked and measured the CRP, relying on a starting point provided by Plaintiff. (R. at 43-44; 308.) Sandefer maintained that there was no map in the FSA filed in 1998. (R. at 43.) Sandefer stated that he knew where Plaintiff wanted the CRP acres to be located and completed the measurement service. (R. at 204.) Sandefer also claimed that the wheat had not been harvested from the CRP acres. (R. at 205.) The County Committee tabled the request for reconsideration. (*Id*.)

At a January 25, 2001 County Committee meeting, Robert Garcia, FSA County Advisor stated that all indications showed that Plaintiff was complying with CRP. (R. at 71.) After a very lengthy discussion, the County Committee determined that Plaintiff did not make a good faith effort

to comply with the CRP requirements. (*Id.*) On January 31, 2001, the County Committee denied Plaintiff's request for reconsideration and upheld the initial determination to terminate the field consisting of thirty-five acres from the CRP program. (R. at 64.)

On March 9, 2001, the New Mexico State FSA Committee reviewed the facts and determined that the physical location of field was not located in the area originally delineated and approved for enrollment in the CRP program, that a portion of the CRP acreage was seeded to an unauthorized crop of wheat and harvested in violation of the terms of the CRP contract, that Plaintiff did not act in good faith, and that the CRP contract should be terminated with respect to the thirty-five acres. (R. at 28; 209.) On March 21, 2001, Acting State Executive Director Larry Burnett issued a letter decision memorialized the State Committee's action terminating the CRP contract with respect to the thirty-five acres. (R. at 240-247.)

Plaintiff appealed. (R. at 230.) An evidentiary hearing was set in Clovis before Hearing Officer Wendell Fennell of the National Appeals Division. (R. at 213-215.) On July 16, 2001, Hearing Officer Fennell reversed the decision to the State FSA Committee, finding that Plaintiff's evidence was more compelling, the CRP acreage was located to the left and West of the center line of the North ½ of Section 31, that the previous delineations of the thirty-five acres were not controlling, and concluded that the Defendant's decision to terminate the CRP contract was error. (R. at 280-285.) In reaching his decision, Hearing Officer Fennell relied heavily on the field measurement performed by Mr. Sandefer. (R. at 282.) Defendant appealed.

On August 22, 2001, Nancy L. Smith, Acting Director of USDA's National Appeals Division (NAD) reversed the Hearing Officer's decision, determining that it was inconsistent with the laws and regulations of the Agency. (R. at 346-350.) Specifically, Acting Director Smith reasoned that the

4

aerial map showed the CRP listed in the field designated 2A, that the CRP-2 completed by the NRCS in 1997 used the field delineations found on the aerial map, that the soil types and designated acreage corresponded to the aerial map and the acreage reports, that Plaintiff had harvested a crop of wheat on CRP land, and that Plaintiff failed to implement the required conservation plan. (R. at 349.) Accordingly, Acting Director Smith determined that the Hearing Officer's decision was not supported by substantial evidence and reversed the lower decision. (R. at 350.) The Acting Director's decision constituted the Division's final determination. 7 U.S.C. § 6999.

### III.    Jurisdiction.

The primary question is whether the agency's decision is subject to judicial review. The provisions of the APA are applicable "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Section 701(a)(2) "makes it clear that 'review is not to be had' in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citations omitted). Although not initially raised by Defendant, the question of whether agency action is subject to judicial review under §701(a)(2) is jurisdictional. *Mount Evans Co. v. Madigan*, 14 F. 3d 1444, 1448 (10th Cir.1994); *Selman v. United States*, 941 F. 2d 1060, 1062 (10th Cir. 1991). Consequently, I requested and received supplemental briefing on this issue

In his supplemental brief, Plaintiff argues that there is direct statutory authority for this Court to review Defendant's decision under 7 U.S.C. §6999. This section provides that "[a] final determination of the Division shall be reviewable and enforceable by any United States District Court of competent jurisdiction in accordance with chapter 7 of Title 5." 7 U.S.C. §6999. Chapter 7 of

Title 5 is the APA. 5 U.S.C. § 701, *et seq.* By its express terms, §6999 states that judicial review of agency action must be in accordance with the terms of the APA. Thus, contrary to Plaintiff's position, §6999 does not bypass §701(a)(2).

Plaintiff additionally argues that §701(a)(2) is not jurisdictional and was waived by Defendant. As noted above, §701(a)(2) is clearly jurisdictional and not subject to waiver. *Mount Evans Co.*, 14 F. 3d at 1448; *Sierra Club v. Yeutter*, 911 F. 2d 1405, 1421 (10th Cir.1990). Accordingly, this argument is not compelling. Plaintiff correctly states that there is a presumption if favor of judicial review, yet fails to acknowledge that this presumption is overridden by §701(a)(2). *Mount Evans Co.*, 14 F. 3d at 1449. Plaintiff's arguments in support of jurisdiction are not convincing.

Defendant, on the other hand, points out that the controlling regulation commits the decision of whether to terminate a CRP contract to agency discretion. "If a participant fails to carry out the terms and conditions of a CRP contract, [the agecy] may terminate that CRP contract." 7 C.F.R. § 1410.52. In a case directly on point, the United States District Court for the Eastern District of Missouri has held that a decision to terminate a CRP contract is committed to the discretion of the Department of Agriculture and is unreviewable under §701(a)(2). *See Small v. United States*, 838 F. Supp. 427 (E.D. Mo.1993), *aff'd,* 48 F. 3d 1225 (8th Cir.1995) (unpublished, text in Westlaw, No. 93-3902). Although *Small* is not controlling, I find its reasoning compelling.

While Neither the Supreme Court nor the Tenth Circuit has directly addressed this issue, the Supreme Court has considered whether §701(a)(2) renders agency decisions unreviewable in several other contexts. *See, e.g., Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (holding that agency's decision not to regulate lethal injections unreviewable because committed to the agency's sole discretion and no law for a reviewing court to apply); *Webster v. Doe*, 486 U.S. 592 (1988) (finding

6

that termination of CIA employees pursuant to statute providing for termination whenever Director deemed such termination necessary or advisable in the interests of the United States unreviewable); *Lincoln v. Vigil*, 508 U.S. at 191 (holding that lump sum allocation spending decision unreviewable where spending decision was committed solely to agency discretion).

Similarly, the Tenth Circuit has considered § 701(a)(2) on several occasions. *See, e.g., McAlpine v. United States*, 112 F. 3d 1429 (10th Cir.1997) (determining that denial of application to take land into trust status under Indian Reorganization Act reviewable); *Bd. of County Comm'rs of County of Adams v. Isaac*, 18 F. 3d 1492, 1498 (10th Cir.1994) (refusal to approve and partially fund construction of facilities for air cargo hub was unreviewable, as "reasonably necessary for air commerce" standard in statute does not provide the court with a justiciable standard of review); *Selman v. United States*, 941 F. 2d 1060 (10th Cir.1991) (holding that language, structure and legislative history of I.R.C. § 6404(e)(1) indicate that Congress meant to commit the abatement of interest to the Secretary's discretion and therefore action unreviewable). These cases establish that §702 (a)(2) precludes judicial review of agency action where a court would have no meaningful standard against which to judge the agency's exercise of discretion.

In this case, the underlying regulation provides that if a participant fails to carry out the terms and conditions of a CRP contract, the agency may terminate that CRP contract. 7 C.F.R. § 1410.52. By its terms, §1410.52 leaves the decision of whether to terminate the contract up to the agency. There is no meaningful standard against which to judge the agency's exercise of discretion. *Lincoln*, 508 U.S. at 191. Because §1410.52 commits the decision to agency discretion, and does not contain any language circumscribing the exercise of such discretion, Plaintiff's case falls directly within the parameters of §701(a)(2). The Complaint is not reviewable under the APA because the decision to

7

terminate the CRP contract is committed to agency discretion as a matter of law. However, as discussed *infra*, Plaintiff would be entitled to no relief even if the Court had jurisdiction to consider his claim.

**IV. Merits.**

Even if this Court had jurisdiction, Plaintiff would be entitled to no relief. Under the APA, a final agency action may be set aside only if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U. S. C.§ 706(2)(A). The party challenging an agency action bears the burden of proving that it was arbitrary and capricious. *AllCare Home Health, Inc. Shalala*, 278 F. 3d 1087, 1089 (10th Cir. 2001). The arbitrary and capricious standard of review has been equated to the substantial evidence test. *Id.* (*citing Northwest Pipeline Corp. v. Fed. Energy Regulatory Comm'n*, 61 F. 3d 1479, 1485 (10th Cir.1995)). Although the standard of review is deferential, the agency "'must ... articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made . . . . Normally, an agency . . . [decision] would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem.'" *Kansas v. United States*, 249 F. 3d 1213, 1228 (10th Cir. 2001) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

A CRP contract may be terminated before the full term of the contract if the participant is not in compliance with the terms and conditions of the contract. 7 C.F.R. § 1410.32(f)(3). CRP participants must carry out the terms and conditions of the contract and must implement a conservation plan. 7 C.F.R. § 1410.32(f)(3). Participants are required to establish and maintain a required vegetative or water cover in order to achieve the desired environmental benefits throughout the contract period. 7 C.F.R. § 1410.20(a)(7). Harvesting of any crop from land subject to a CRP

8

contract is prohibited. 7 C.F.R. § 1410.20(a)(6).

The administrative record establishes that Plaintiff signed an acreage report in 1998, with an area delineated in the aerial photocopy for field 2A consisting of thirty-five acres matching the area originally approved for enrollment. (R. at 154-156). Mr. Cone signed an acreage report on behalf of Plaintiff in 1999, with an area delineated in the aerial photocopy for field 2A consisting of thirty-five acres matching the area originally approved for CRP enrollment. (R. at 149-151.) On July 17, 2000, Mr. Lee signed and acreage report showing the thirty-five acre parcel in the same location and the prior years. (R. at 93-96.)

While Mr. Sandefer stated that there was no map in the file in 1998, this statement is flatly contradicted by the CRP-2 that was completed by the NRCS in 1997. (R. at 169-178.) Sandefer measured the field based on a starting point provided by Plaintiff that was inconsistent with the 1997 NRCS CRP-2 form. (R. at 43-44; 169-178.) Because Mr. Sandefer's observations and measurements were inconsistent with the rest of the administrative record, Acting Director Smith appropriately disregarded them.

The administrative record further demonstrates that on June 9, 2000, County Executive Director Terry visited the farm and discovered that the area that had been approved for CRP was planted with a crop of wheat. (R. at 26; 105.) Plaintiff and Mr. Lee were informed verbally that the wheat could not be harvested, and on June 26, 2000, the County Office of the FSA notified Plaintiff that a discrepancy existed on the location of the acreage enrolled in CRP, that an ineligible cover of wheat was planted on the acreage, and that this unauthorized wheat could not be harvested. (R. at 26; 102, 108.) A farm visit on July 7, 2000, revealed that the wheat in field 2A had been harvested and the stubble plowed. (R. at 26; 94.)

9

Defendant has articulated a satisfactory explanation for its action, including a rational connection between the facts found and the decision rendered. *See Kansas v. United States*, 249 F. 3d at 1228. Additionally, Defendant considered all aspects of the issue in reaching its final decision to terminate the CRP contract with respect to the thirty-five acres at issue. *Id*. Plaintiff has failed to meet his burden of proving that the final agency action was arbitrary and capricious. *See* 5 U. S. C.§ 706(2)(A); *AllCare Home Health, Inc.*, 278 F. 3d at 1089. Accordingly, Defendant's final decision should be affirmed.

**V.     Conclusion.**

Upon review of the administrative record, the Court has determined that the final decision of the Acting Director Nancy L. Smith, dated August 22, 2001, be affirmed and that judgment be entered for Defendant.

**WHEREFORE,**

**IT IS ORDERED** that, if this Court has jurisdiction, the final decision of the Acting Director Nancy L. Smith, dated August 22, 2001, be affirmed.

**IT IS FURTHER ORDERED** that Plaintiff's appeal is dismissed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**